UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

IN RE:   LEONARD S. LYLE         BANKRUPTCY APPEAL

CIVIL ACTION NO. 04-12720-DPW

**BRIEF FOR PLAINTIFFS-APPELLANTS**

**ROBERT F. LUCAS, JR. AND RACHEL F. LUCAS**

Richard M. Canzano
BBO# 072500
Blumsack & Canzano
36 Commerce Way
Woburn, MA 01801
(781) 935-3500

ROBERT F. LUCAS
BBO# 306740
Nigro, Pettepit & Lucas
649 Main Street
Wakefield, MA 01880
(781) 245-4545

## TABLE OF CONTENTS

Table of Cases. . . . . . . . . . . . . . . . . .   3

Table of Statutes & Other Authorities Cited . . . .   4

Statement of Basis of Appellate Jurisdiction. . . .  10

Applicable Standard of Appellate Review . . . . . .  11

Statement of Issues . . . . . . . . . . . . . . .  12

Statement of the Case . . . . . . . . . . . . . .  14

Argument. . . . . . . . . . . . . . . . . . . . .  19

Conclusion. . . . . . . . . . . . . . . . . . . .  27

**TABLE OF CASES**

1.  Palmacci v. Umpierrez, 121 F.3, 781 at 786 (1997),
    pp. 16, 18, 24, 27.

2.  Jim Ravioli, Inc. v. Creta, In Re: Creta 271 B.R. 214
    (2002), pp. 17, 24, 25, 26.

3.  Matter of Overly-Hautz Co., 81 B.R. 434, p. 11.

## TABLE OF STATUTES AND OTHER AUTHORITIES CITED

**Page**

1.   Title 28, §158(a) ..............................10

"The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this Title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving."

2.   Bankruptcy Code, §523(a)(2)(A) ................18

523(a) "A discharge...does not discharge an individual debtor from any debt:--

"(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by--

"(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

4

   3.   Massachusetts General Laws, Chapter 93A........9,
                                              16, 22, 24

   Section 2(a) "Unfair methods of competition and unfair
or deceptive acts or practices in the conduct of any trade
or commerce are hereby declared unlawful."

   Section 9(1) "Any person, other than a person entitled
to bring action under section eleven of this chapter,
[inapplicable to the facts of this case] who has been
injured by another person's use or employment of any
method, act or practice declared to be unlawful by section
two or any rule or regulation issued thereunder...may bring
an action in the superior court...whether by way of
original complaint, counterclaim, cross-claim or third
party action, for damages and such equitable relief,
including an injunction, as the court deems to be necessary
and proper."

   Section 9(3) "At least thirty days prior to the filing
of any such action, a written demand for relief,
identifying the claimant and reasonably describing the
unfair or deceptive act or practice relied upon and the
injury suffered, shall be mailed or delivered to any
prospective respondent..."

4.    Massachusetts General Laws, Chapter 142A......15,
20, 21, 22

Section 1 (Definitions)

"'Administrator', the chief administrator of the board
of building regulations and standards, an agency within the
executive office of public safety established by section 18
of chapter 6A.

"'Claimant', an owner and resident of a residential
building, containing at least one but not more than four
dwelling units, who has entered into a construction
contract with a contractor to carry out construction work
on said building, and who is making a claim against said
contractor for failure of performance under said contract.

"'Contract', a written agreement contained in one or
more documents for the performance of certain residential
contracting work, including all labor, goods and services
set forth under said agreement.

"'Contractor', any person who owns or operates a
contracting business who, through himself or others,
undertakes, offers to undertake, purports to have the
capacity to undertake, or submits a bid for, residential
contracting work.

"'Director', the director of consumer affairs and
business regulation.

6

"'Fund Administrator', the administrator of the
residential contractor's guaranty fund, appointed by the
director of consumer affairs and business regulation.

"'Fund', the Residential Contractor's Guaranty Fund.

"'Owner', any homeowner of a pre-existing owner-
occupied building containing at least one but not more than
four dwelling units, or tenant thereof, who orders,
contracts for, or purchases the services of a contractor or
subcontractor.

"'Residential Contracting', the reconstruction,
alteration...or the construction of an addition to any pre-
existing owner-occupied building containing at least one
but not more than four dwelling units, which building or
portion thereof is used or designed to be used as a
residence or dwelling unit..."

Section 5  "There shall be established a Residential
Contractor's Guaranty Fund within the office of consumer
affairs and business regulation, to compensate owners for
actual losses incurred by them as a result of registered
contractor or subcontractor conduct which has been found by
a court of competent jurisdiction to be work performed in a
poor or unworkmanlike manner or which is a common law
violation or a violation of any statute or regulation
designed for the protection of consumers, including but not
limited to, prohibited acts listed in section seventeen,

7

provided however that the owner has exhausted all customary and reasonable efforts to collect a judgment but the contractor has filed for bankruptcy, fled the jurisdiction or the owner is otherwise unable to collect such judgment after execution..."

"For purposes of recovery against the fund, the conduct of a registered contractor or subcontractor shall be deemed to include the conduct of his employees, salespersons and subcontractors, whether or not an express relationship exists, provided the work or activities of such individuals is within the scope of the contract and not for additional work beyond the contract which such individuals undertake by separate agreement with the owner."

Section 17 "The following acts are prohibited by contractors or subcontractors:

"(1) operating without a certificate of registration issued by the administrator,

"(4) making any material misrepresentation in the procurement of a contract or making any false promise of a character likely to influence, persuade or induce the procurement of a contract,

"(8) publishing, directly or indirectly, any advertisement relating to home construction or home

8

improvements which does not contain the contractor's or subcontractor's certificate of registration number or which does contain an assertion, representation or statement of fact which is false, deceptive, or misleading,

"(9) advertising in any manner that a registrant is registered under this chapter unless the advertisement includes an accurate reference to the contractor's or subcontractor's certificate of registration,

"(13) conducting a residential contracting business in any name other the one in which the contractor or subcontractor is registered.

"Violations of this section shall subject the violator to the administrative sanctions of section eighteen and to criminal prosecution as prescribed in section nineteen.

"Violations of any of the provisions of this chapter shall constitute an unfair or deceptive act under the provisions of chapter 93A."

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

Jurisdiction of the within appeal is conferred upon this Court under the provisions of Title 28, Section 158.

## APPLICABLE STANDARD OF APPELLATE REVIEW

Findings of fact made by the Bankruptcy Court judge are not to be set aside on appeal unless clearly erroneous (Matter of Overly-Hautz Co., 81 B.R. 434) but conclusions of law are given de novo review.

Accordingly, this court in reviewing the Bankruptcy Court's determination as a matter of law that there was no evidence of damages should review the transcript de novo.

## STATEMENT OF ISSUES

1.  Whether the court erred in concluding that the
    Plaintiffs presented no evidence of damages.

2.  Whether evidence that, as a result of the Debtor's
    being unlicensed, the Plaintiffs were precluded from
    eligibility from sharing in the Massachusetts Guaranty
    Fund constitutes evidence of damages caused by
    Debtor's fraud in representing himself to be fully
    licensed.

3.  Whether Plaintiffs' assertion of damages in a letter
    demanding relief from the Debtor constitutes evidence
    of Plaintiffs' damages.

4.  Whether Debtor's written receipt for cash paid by
    Plaintiffs at Debtor's request and paid by Plaintiffs
    upon Debtor's false representation that he was
    licensed constitutes evidence of damages incurred by
    the Plaintiffs because of Debtor's fraud.

5.  Whether Plaintiffs had a right to rely upon the
    Court's assertion that the Court need not hear
    evidence of damages.

    The applicable standard of appellate review requires
    de novo review as to matters of law and a clearly

12

erroneous standard as to matters of fact.  The
Bankruptcy Court essentially made no findings of fact
and ruled as a matter of law that there was no
evidence of damages.  Accordingly, a de novo review is
appropriate.

## STATEMENT OF CASE

Defendant Debtor commenced a Chapter 7 proceeding in the Bankruptcy Court for the Eastern Division of Massachusetts. Plaintiffs brought the within adversary proceeding to confirm the non-dischargeability of the Defendant's debt to the Plaintiffs. The Plaintiffs had hired the Defendant, a contractor engaged in the construction business, to build a three-story addition to their home at 28 Maple Road in Melrose, Massachusetts.

The Defendant held himself out to be a contractor licensed by the Commonwealth of Massachusetts. In fact, he was unlicensed at all applicable times. The Plaintiffs brought the within adversary proceeding alleging that they had been defrauded by the Defendant with respect to his representation that he was a licensed contractor. The work, labor and materials provided by the Defendant under a written contract were improper and defective, resulting in damages to the Plaintiffs as outlined in the Plaintiffs' demand letter to the Defendant (Plaintiffs' Exhibit A-5). The written agreement (Exhibit A-1) required Defendant to complete all construction in a good and workmanlike manner and included guaranties, inter alia, that the work, labor and materials will be and remain free of substantial defect for a period of one year following completion of all construction.

14

Defendant gave to the Plaintiffs a business card when they first met and before a contract was signed asserting that he was a licensed contractor and identifying licenses he did not then in fact.

Plaintiffs specifically asked Defendant whether he was licensed and he replied that he was.

An initial payment under the contract in the amount of $33,500.00 was made by the Plaintiffs to the Defendant in cash at the express request of Defendant.

Defendant sought, as a licensed contractor, a building permit from the City of Melrose for the construction and falsely represented the cost of construction to be estimated at $47,000.00 when Defendant had already signed a written agreement for a cost in excess of $100,000.00. Fees charged by the City of Melrose for a building permit are determined by the estimated construction cost, the higher the cost, the higher the fee.

Defendant was put on notice by Plaintiffs by letter that he was in violation of the provisions of Massachusetts General Laws, Chapter 142A, among the consequences of which was the preclusion of the Plaintiffs from participating in the State Guaranty Fund. Massachusetts General Laws provides for the existence of a guaranty fund from which homeowners may recoup damages caused by the improper workmanship of licensed contractors. The fact that the

15

Defendant was unlicensed precludes the Plaintiffs from
sharing in the benefits of that guaranty fund as confirmed
by the city building inspector. The Plaintiffs would not
have hired the Defendant had they known he was not licensed
as a contractor (Transcript, p. 20, lines 15-18). At the
time of the transaction, Defendant used a business card
(Exhibit A-2) which identified him as a licensed
contractor. The Plaintiffs made an initial payment against
the contract price in the amount of $33,500.00 in cash
(Transcript, P. 43, lines 19-20) at the express request of
the Defendant (Transcript, p. 44, lines 1-13). Prior to
resting, counsel for Plaintiffs called the court's
attention to the 93A letter (Transcript, p. 30, lines 9-14)
and confirmed with the court that no further evidence of
damages would be necessary. The court replied to counsel's
comment regarding damages, "You're off the hook, anyway,
because I have previously ruled that I don't give money
judgments in dischargeability actions. All I determine is
whether a debt is dischargeable or not." (Transcript, p.
30, lines 15-20) Counsel then retorted, "I just wanted to
be sure that it (damages) was touched, Your Honor." The
court responded, "Not a problem." (Transcript, p. 30,
lines 23-25)

The court opined in findings from the bench that the
case was to be decided under the principles enunciated in
Palmacci v. Umpierrez, 121 F.3, 781 at 786 (1997). The

16

court said, "That test, which is quite standard in any
event, requires that there are six elements to be
demonstrated; first, that the debtor made a knowingly false
representation or made it with reckless disregard of the
truth; secondly, the debtor intended to deceive; three, the
debtor intended to induce the creditor to rely upon the
false statement; four, the creditor actually relied upon
the misrepresentation; five, the creditor's reliance was
justifiable; and, six, a reliance upon the false statement
caused the damage." (Transcript, p. 47, line 25; p. 48,
lines 1-8)

In his finding and rulings, the court also observed
that the case of Jim Ravioli, Inc. v. Creta, In Re Creta,
271 B.R. 214, a BAP decision in 2002, was similar to the
facts at bar. The court opined, "The creditor and the
debtor (in the Creta case) had entered into a contract
where the debtor was to install two air conditioning units.
At the time of the contract, the debtor misrepresented to
the creditor that he was licensed by the state to perform
the work. Now I'm not saying that necessarily that was the
case here because we have disputed testimony, but given
that fact, the BAP held that it was necessary for the
plaintiff to show proximate cause and had noted that if the
creditor presented sufficient evidence to establish that
the licensing representation was a substantial factor in
entering into the contract, the representation went to the

17

essence of the contract.  In that case it could be a
satisfaction of the early points in the Palmacci case.

    "Now I don't have to decide whether there was a
misrepresentation, and I don't have to decide whether there
was reliance of the type that would trigger 523(a)(2)(A)
because in this case I have not one iota of evidence of
damage.  I have zero evidence of damage, and when you have
zero evidence of damage the final element of the Palmacci
test, that the reliance caused the damage is not
satisfied."  (Transcript, p. 48, lines 10-25; p. 49, lines
1-7)

**ARGUMENT**

The court erred in concluding there was no evidence of
damages caused by the Plaintiffs' reliance upon the
Defendant's misrepresentation. There was uncontroverted
evidence from the Plaintiffs that they would not have
entered into a contract with the Defendant if he were
unlicensed.

There was uncontroverted evidence on behalf of the
Plaintiffs that the Plaintiffs relied upon representations
that the Defendant was a licensed contractor (Transcript,
p. 18, lines 3-14) Plaintiffs testified that Defendant
specifically represented that he was licensed (Transcript,
p. 7, lines 15-18) and that he handed them a business card
identifying himself as a licensed contractor (Exhibit A-2).

The building permit application filed by the Defendant
with the City of Melrose (Exhibit A-4) was the kind used by
a licensed contractor (Transcript, p. 24, lines 13-15) and
the building inspector was under the impression that the
Defendant was a licensed contractor (Transcript, p. 24,
lines 9-12). There was uncontroverted evidence from the
building inspector (Transcript, p. 24, lines 21-24) that
because the Defendant was unlicensed the Plaintiffs were
precluded from recouping losses from the State Guaranty
Fund. Those losses were itemized in the demand letter
received into evidence as Exhibit A-5. Thus, had the

Defendant in fact been licensed and his debt for the losses incurred by the Plaintiff discharged in bankruptcy, the Plaintiffs would have had recourse from the State Guaranty Fund.

The building inspector also testified that the homeowner's signature is required when a licensed contractor is seeking a permit (Transcript, p. 24, lines 16-20).

Plaintiff Rachel Lucas as homeowner signed the application for a building permit (Transcript, p. 14, lines 23-24) but she did not have an opportunity to read the document (Transcript, pp. 5-8).

Defendant came to the Plaintiffs' house in the early morning with a very large clipboard and a box of papers rolled over behind the clipboard, pointed to one page and said, "Mrs. Lucas, I need you to sign right here so I can get your building permit." (Transcript, p. 15, lines 1-4)

1.   Whether the court erred in concluding that the Plaintiffs presented no evidence of damages.

The Plaintiffs presented adequate evidence of damages to support a finding in the following particulars:

A.   There was uncontroverted testimony regarding the provisions of Massachusetts General Laws, Chapter 142A. Because the Defendant was not a licensed contractor upon

20

his discharge in bankruptcy, the Plaintiffs would be ineligible to participate in the Massachusetts Guaranty Fund and would thereby be unable to recoup their losses.

B.    The Plaintiffs offered in evidence without objection their demand letter identifying the Defendant's violation of Massachusetts General Laws, Chapter 142A and specifically itemizing all of the defects in the work, labor and materials provided by the Defendant for which they are entitled to recovery.

C.    The Plaintiffs offered evidence that based upon the Defendant's representation that he was a licensed contractor they paid him $33,500.00 in cash and the Defendant acknowledged receipt of that sum of money as an initial payment on the contract.

Accordingly, the court erred in concluding that the Plaintiffs presented no evidence of damages.

2.    Whether evidence that, as a result of the Debtor's being unlicensed, the Plaintiffs were precluded from eligibility from sharing in the Massachusetts Guaranty Fund constitutes evidence of damages caused by Debtor's fraud in representing himself to be fully licensed.

The Massachusetts Guaranty Fund established under the provisions of Massachusetts General Laws, Chapter 142A is specifically intended "to compensate owners for actual

21

losses incurred by them as a result of registered
contractor or subcontractor conduct…"  The court refused to
hear specific evidence regarding the actual losses incurred
by the Plaintiffs, but those losses were itemized in
Exhibit A-5 in any event.  Exhibit A-5 (the Plaintiffs'
demand letter) was received without objection.  The fraud
of the Defendant in falsely representing himself to be a
licensed contractor goes to the very essence of the damages
incurred by the Plaintiffs.  It renders the Plaintiffs
ineligible to recoup their losses and therefore makes
Defendant's debt nondischargeable.

   3.   Whether Plaintiffs' assertion of damages in a
letter demanding relief from the Debtor constitutes
evidence of Plaintiffs' damages.

   Plaintiffs' demand letter, provided under the
provisions of Massachusetts General Laws, Chapter 93A,
itemizes in detail the fact that the Defendant
misrepresented himself to be licensed, the fact that his
actions constitute a violation of Massachusetts General
Laws, Chapter 142A, and the specific losses incurred by the
Plaintiffs as a result of the Defendant's improper work.
Since the Plaintiffs would be able to recoup those losses
from the Massachusetts Guaranty Fund if the Defendant were
licensed, the letter constitutes evidence of the damages

                               22

they have incurred as a consequence of his being unlicensed
and his false representation to the contrary.

   4.   Whether Debtor's written receipt for cash paid by
Plaintiffs at Debtor's request and paid by Plaintiffs upon
Debtor's false representation that he was licensed
constitutes evidence of damages incurred by the Plaintiffs
because of Debtor's fraud.

   Defendant acknowledged receipt of cash paid by the
Plaintiffs to the Defendant, cash that would not have been
paid according to the Plaintiffs' testimony, if they knew
the Defendant was unlicensed.  His specific representations
that he was so licensed resulted in their payment of that
cash money, the receipt for which is Exhibit A-3.
Consequently, the Plaintiffs have provided evidence of the
damage caused by the Defendant's false representation that
he was licensed.

   5.   Whether Plaintiffs had a right to rely upon the
Court's assertion that the Court need not hear evidence of
damages.

   In the course of the trial, the trial judge has great
discretion to control trial evidence.  On the record,
counsel for Plaintiffs specifically raised with the court
the issue of damages (Transcript, p. 30, lines 9-25).  The
court confirmed earlier off the record instructions to

23

Case 1:04-cv-12720-DPW   Document 3   Filed 01/13/2005   Page 24 of 27

counsel that he would not deal with actual damages since
any award for the Plaintiffs would not include money
damages.

Counsel, seeking to clarify the court's earlier
ruling, was informed in substance that no additional
evidence of actual damages was necessary and would not be
received.

Counsel called the court's attention to the fact that
the 93A letter (Exhibit A-5) was already in evidence and
itemized Plaintiffs' damages.

Plaintiffs respectfully suggest that all of the
evidence including specifically evidence of damages meets
the standards of Palmacci v. Umpierrez and that Plaintiffs
are entitled to judgment on the evidence.

The court expressly made his findings and ruling on
the issue of damages alone, concluding in substance that in
the absence of evidence of damages he need not make any
findings regarding the other elements established in
Palmacci.

It is respectfully suggested that the distinction
between the Defendant being licensed and unlicensed is
particularly meaningful in a Massachusetts home
construction setting.  The court opined that the principles
enunciated in the Creta case were controlling, but in that

24

case there was no evidence that the failure of an air conditioning contractor to be licensed precluded a creditor from any rights.  In the instant case, that evidence is uncontroverted.  Consequently, Jim Ravioli, Inc. v. Creta ought not to be looked upon for guidance in the instant case.

In Creta, the Bankruptcy Court concluded that the debtor Creta was entitled to discharge its debt because plaintiff Jim Ravioli had not established a causal connection between the fraudulent representations and the damages suffered.  Those false statements included the debtor's representation that he was a licensed refrigeration technician when in fact he was not licensed.

On appeal, the Bankruptcy Appellate Panel completed a detailed analysis of proximate cause and differentiated between causation in fact and legal causation and concluded that the Bankruptcy Court had not properly applied the framework required for making its findings on proximate cause.

The Panel in substance opined that a misrepresentation of professional licensure could be adequate to support fraud, but that the debtor might rebut such a prima facie showing by evidence that although unlicensed he was properly qualified.

25

The Panel remanded the case to the Bankruptcy Court
for further findings.

Unlike Creta, the instant case includes direct and
uncontroverted evidence of harm flowing to the Plaintiffs
directly from the misrepresentation regarding licensure,
namely preclusion from sharing in the State Guaranty Fund.
Thus, whether the Defendant is competent, qualified or not,
the Plaintiffs have been harmed by their reliance upon his
misrepresentation.

26

## CONCLUSION

This court's review on appeal of the trial transcript in its entirety compels the conclusion that the Plaintiffs sustained their burden of proof with respect to each of the elements identified in Palmacci and the Plaintiffs are therefore entitled to judgment.

Respectfully submitted,
Plaintiffs-Appellants,
By their attorneys,


Richard M. Canzano
BBO# 072500
Blumsack & Canzano
36 Commerce Way
Woburn, MA  01801
(781) 935-3500


Robert F. Lucas
BBO# 306740
Nigro, Pettepit & Lucas
649 Main Street
Wakefield, MA  01880
(781) 245-4545

cm/lucas-lyle/appellants brief

27